* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. The parties are subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between the named plaintiff and defendant on or about 18 November 2001, the date of the admittedly compensable injury.
5. Defendant is self-insured and Key Risk Management Services, Inc., is their Third-Party Administrator.
6. Plaintiff's applicable average weekly wage is $525.00 and his weekly compensation rate is $350.02.
7. The parties attended a mediated settlement conference on or about 28 February 2005.
8. Defendant admits that on 18 November 2001 plaintiff suffered a compensable injury by accident to his left knee. Plaintiff contends and defendant denies that plaintiff also sustained a compensable injury to his back on 18 November 2001. The issues before the Commission are: (a) Whether plaintiff suffered a compensable back injury on 18 November 2001, (b) Whether plaintiff's claim for benefits relating to his back injury is barred under N.C. Gen. Stat. § 97-22, and (c) To what additional compensation and medical benefits, if any, is plaintiff entitled to receive as a result of his compensable injury or injuries of 18 November 2001.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 35 year-old high school graduate who is married with children. He began employment with defendant as a Corrections Officer on or about 27 May 1997.
2. On 21 July 2000, plaintiff suffered a compensable injury when he stepped between edging and a sidewalk and injured his right ankle. As of 18 November 2001, plaintiff was still under Dr. Boone's care for the 21 July 2000 right ankle injury and was under instructions to wear a boot cast.
3. On 18 November 2001, while at work, plaintiff was walking between buildings wearing the boot cast on his right ankle. As plaintiff approached the door of a building, his boot cast got caught on a thick wire doormat, causing plaintiff to trip and fall. As plaintiff fell, he jerked and twisted his body and left knee. Plaintiff immediately felt pain in his left knee. Plaintiff did not feel immediate back pain, but testified that he had immediate right leg pain, which increasingly and eventually moved up into his back. One of plaintiff's supervisors witnessed plaintiff's fall.
4. The witnessing supervisor then reported the incident to the Officer-In-Charge. As requested by defendant-employer, plaintiff immediately filled out the required paperwork regarding the fall. Plaintiff's supervisors then sent him to seek medical attention under instruction from plaintiff's Lieutenant. Defendant received nearly instantaneous actual and written notice of plaintiff's fall, as well as his resultant need for immediate medical attention.
5. Plaintiff was first treated at Johnston Memorial Hospital in Smithfield. Plaintiff had a burning feeling in his left knee, and he also had pain down the back of his right leg. X-rays were taken at the hospital. It was determined that plaintiff's primary problem was his left knee. Plaintiff was given a knee brace to wear and crutches and was instructed to follow-up with his primary care physician.
6. Defendant requested that plaintiff receive an evaluation from Dr. Boone. Plaintiff went to Raleigh Orthopaedic Clinic on 27 November 2001 and saw Mr. Cole, a Physician's Assistant, but did not see Dr. Boone. Plaintiff was prescribed Darvocet and Naprosyn, was fitted for a "knee sleeve", was removed from the knee splint, and was allowed to return to light duty, "sit down" work with no driving.
7. The next day plaintiff saw Dr. Boone. Plaintiff testified that when he saw Dr. Boone, he described for Dr. Boone the pain that he was feeling in his left knee and also told him about the uncomfortable pain that he was having in his right leg. Plaintiff described the pain in his right leg as going down the back of his leg. Plaintiff had not felt that type of pain in his right leg prior to 18 November 2001. Dr. Boone noted that plaintiff had a probable meniscal injury in his left knee, referred him for physical therapy, recommended an MRI, and assigned work restrictions. On 5 December 2001, Dr. Boone wrote plaintiff out of work completely from 27 November 2001 through 20 December 2001 for left knee and right ankle pain.
8. An amended Form 18, dated 3 December 2001, was filed which noted the back injury component of the 18 November 2001 incident. This amended Form 18, however, was not stamped received by the Industrial Commission until 17 April 2002.
9. Plaintiff underwent an MRI on 6 December 2001. Upon reviewing plaintiff's MRI results, Dr. Boone wrote plaintiff out of work from December 10 to December 17, 2001 but stated that on 18 December 2001 plaintiff could return to sit down work. Dr. Boone also stated that plaintiff "could potentially need arthroscopy if his knee does not improve" and he could go to the pain clinic for his ankle after his knee problem resolves. Dr. Boone also recommended physical therapy for plaintiff's left knee.
10. Plaintiff saw Dr. Boone on 23 December 2001 regarding ongoing pain.
11. Dr. Boone told plaintiff that defendant's workers' compensation insurance was only paying for plaintiff's left knee and this was why Dr. Boone was not addressing the pain in his right leg. During this period, the pain in plaintiff's right leg had progressed into his back and was getting so severe that his right leg was occasionally "giving out." Plaintiff's wife took plaintiff to the emergency room for treatment of right side and back pain on 12 January 2002. Plaintiff called defendant-employer and informed a Lieutenant that his back trouble had caused an emergency room visit.
12. After plaintiff understood that Dr. Boone was not going to treat his right leg pain and back pain, plaintiff went to see his family physician, Dr. Clark, on 14 January 2002 complaining of low back pain. Dr. Clark ordered x-rays and ordered plaintiff out of work for one week. At a subsequent visit, Dr. Clark recommended an MRI, which plaintiff underwent on 30 January 2002.
13. On 1 February 2002, plaintiff returned again to Dr. Clark with low back and right leg pain. Dr. Clark reviewed the 30 January 2002 MRI results and stated that plaintiff had a ruptured disk, a right lateral L3-4 disc herniation, and would require surgery. Dr. Clark referred plaintiff to Dr. Barry I. Katz of Goldsboro Neurological Surgery for the surgical procedure and further evaluation. Through January and February the pain in plaintiff's back increased to severe levels. Plaintiff's right leg continued to "give out" on him.
14. The 3 February 2002 Progress Report prepared by the Southern Rehabiliation Network for defendant reflects that plaintiff had an MRI of his back which identified a herniated disc, and that the doctor felt the back condition was caused by the trip and fall. Therefore, by 3 February 2002 at the latest, Defendant had notice of plaintiff's back condition and that, in the opinion of a doctor it was related to the 18 November 2001 fall. Given the delayed nature of the inception of plaintiff's back pain and the circumstances of this case, plaintiff had reasonable excuse for, and defendant was not prejudiced by, any lack of timely actual or written notice regarding the back component of plaintiff's injuries stemming from the 18 November 2001 fall.
15. Dr. Katz eventually recommended back surgery. On 1 March 2002, Dr. Katz performed a right L3-4 diskectomy/foraminotomy on plaintiff.
16. Following the surgery, plaintiff returned to Dr. Katz on 7, 14, and 28 March 2002, and appeared to be doing better. On 4 and 11 April 2002, plaintiff presented to Dr. Katz with increased low back pain and on 2 May 2002 also described lower left extremity pain.
17. On 1 May 2002, plaintiff went to the Emergency Room of Wayne Memorial Hospital for back pain radiating into his left side and weakness on his left side after leaning forward. He was treated with Solu-Medrol and Stadol and was given prescriptions for Prednisone taper as well as Percocet and recommended to follow-up with Dr. Katz.
18. Plaintiff went to Goldsboro Physical Therapy and Rehabilitation, Inc. on 16 May 2002 pursuant to Dr. Katz's orders. A history was taken by physical therapist Tony L. Williams which stated that plaintiff tripped and fell at work on 18 November 2001, "injuring his low back. He reports he had right leg pain afterwards and pain became so severe he had to go to the Emergency Room in January." Plaintiff underwent physical therapy from 16 May 2002 to 25 June 2002.
19. Pursuant to a recommendation and referral from Dr. Katz, plaintiff first saw Dr. Long on 15 August 2002. Plaintiff complained to Dr. Long about low back pain radiating down his right leg. According to Dr. Long's notes, plaintiff told him that "[h]e fell at work in November 2001. He had leg pain which increased over a period of time and then developed back pain." Among other things, Dr. Long recommended that plaintiff have another series of "transforaminal epidural steroid injections."
20. On 16 September 2002, plaintiff returned to Dr. Boone for a follow-up of his right foot and ankle condition. Dr. Boone recommended an FCE to identify plaintiff's permanent work restrictions and would reserve comment until that was obtained.
21. Plaintiff continued to receive ongoing treatment from Dr. Katz and Dr. Long for back pain and bilateral lower extremity pain. In October 2002, Dr. Katz completed a form on which he indicated that plaintiff was incapable of performing certain essential job requirements of a Correctional Officer. Dr. Katz also issued permanent work restrictions for plaintiff as follows: 1) no lifting greater than 10 pounds; 2) no prolonged sitting or standing; and 3) no climbing or crawling.
22. In response to medical questions sent by plaintiff's counsel on 23 November 2002, Dr. Katz stated: "I talked with [plaintiff] in some detail. I do think his back pain and subsequent need for surgery is causally related to the injury on 18 November 2001. I think his injury more than likely aggravated a pre-existing condition."
23. Plaintiff was dismissed by "involuntary separation" from employment with defendant on or about 7 July 2003 due to "unavailability after all available leave has been exhausted." Defendant stated in letters to plaintiff that "[t]here is no accommodation that will allow you to perform these essential job functions" and that "if it were your intention to return to work, your healthcare provider would need to certify that you are able to perform all essential job functions of your position without restrictions."
24. Plaintiff continued to receive treatment from Dr. Katz, Dr. Clark, and others for continued back and leg symptoms.
25. On 13 November 2003, plaintiff went to see Dr. Edwin B. Cooper, Jr. for an orthopaedic rehabilitation consultation regarding his left knee. According to Dr. Cooper's assessment, plaintiff's 18 November 2001 fall had the potential to tear the medial meniscus of his left knee. Dr. Cooper considered plaintiff "disabled to work at his previous job for an indefinite period of time." Dr. Cooper furthermore recommended an arthroscopy of plaintiff's left knee and surgical correction of any defects found by the arthroscopy. Furthermore, in Dr. Cooper's opinion, plaintiff had not yet reached maximum medical improvement for his left knee and the level of impairment to the left knee was greater than the 5% rating given by Dr. Boone.
26. On 3 May 2005, plaintiff presented to Dr. Katz's office complaining of back pain and lower extremity symptoms, worse on the right side going down his thigh. He also was experiencing symptoms in his left hip. Dr. Katz noted a lateral L3-4 disk herniation.
27. On 27 May 2005, Dr. Katz performed a "redo L3-4 decompression, L3-4 posterior lumbar interbody fusion with saber cages and Monarch pedicle screws, and L3-4 posterolateral fusion."
28. On 7 October 2005, plaintiff underwent another MRI of his lumber spine. On 13 October 2005, plaintiff followed up with Dr. Katz, who referred plaintiff to Rex Pain Management. As of the date of the hearing, plaintiff remained under a referral to the Rex Pain Clinic per Dr. Katz's order.
29. Dr. Katz, an expert in the field of neurosurgery, testified by deposition regarding plaintiff's back that "it was much more than likely that the fall on 18 November 2001 aggravated a preexisting condition." Dr. Katz further testified that plaintiff could not return to work "unless it was extremely sedentary."
30. Dr. Cooper, an expert in the field of orthopaedic surgery who examined plaintiff on 13 November 2003, testified by deposition. In his testimony Dr. Cooper related that he was specifically instructed by defendant "not to examine [plaintiff's] back because the back injury was not accepted." Dr. Cooper nevertheless examined plaintiff' back condition as part of his examination of the condition of plaintiff's extremities. Dr. Cooper testified that plaintiff's fall at work on 18 November 2001 caused or exacerbated plaintiff's back condition, ultimately leading to plaintiff's back surgery.
31. Regarding plaintiff's left knee condition, Dr. Cooper testified that plaintiff had "internal derangement left knee; probable torn medial meniscus" and a "Grade 1 strain of the medial collateral ligament with left knee instability." Dr. Cooper testified that plaintiff needed an arthroscopy to assess fully the left knee condition before a final evaluation could be made. In his medical notes Dr. Cooper stated that plaintiff was "disabled to work at his previous job for an indefinite period of time" as a result of the 18 November 2001 knee injury.
32. Plaintiff's 18 November 2001 workplace trip and fall materially aggravated a pre-existing back condition, causing disability.
33. Plaintiff's 18 November 2001 workplace trip and fall caused plaintiff to suffer a disabling knee injury.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. An injury is compensable if it is caused by an accident that arises out of the employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2; Brown v. Family Dollar Distrib. Ctr.,129 N.C. App. 361 (1998).
2. Plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with employer-defendant on 18 November 2001 when he tripped and fell, causing a material acceleration or aggravation of a back condition, leading to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361 (1998).
3. Plaintiff sustained a compensable injury by accident to his left knee arising out of and in the course of his employment on 18 November 2001 when he tripped and fell, leading to disability. N.C. Gen. Stat. § 97-2(6).
4. As a result of these compensable injuries, subject to a credit for benefits already paid to plaintiff, plaintiff is entitled to temporary total disability compensation at a rate of $350.02 per week for the period from 18 November 2001 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have the defendant provide all medical treatment, incurred or to be incurred, necessitated by the 18 November 2001 injuries by accident. This treatment includes, but is not limited to, expenses incurred as a result of physical therapy and pain management as well as treatments administered or recommended by Drs. Katz, Clark, Long, Cooper, and Massey. N.C. Gen. Stat. § 97-25.
6. Plaintiff's back claim is not barred pursuant to N.C. Gen. Stat. § 97-22 because, (1) given the delayed inception of plaintiff's back pain, plaintiff had reasonable excuse for any lack of timely written notice regarding the back injury, and (2) given the immediate actual and written notice given regarding the 18 November 2001 fall and resultant medical treatment provided by defendant, defendant was not prejudiced by any delay in written notice regarding plaintiff's back injury. N.C. Gen. Stat. § 97-22; Lakey v. U.S. Airways, 155 N.C. App. 169, cert.Denied, 357 N.C. 251 (2003), Pierce v. Autoclave Block Corp.,27 N.C. App. 276, cert. denied, 288 N.C. 731 (1975).
7. Defendant is entitled to a credit for benefits already paid to plaintiff. N.C. Gen. Stat. §§ 97-29; 97-42.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a credit for benefits already paid to plaintiff, defendant shall pay plaintiff temporary total disability compensation at a rate of $350.02 per week for the period from 18 November 2001 and continuing until plaintiff returns to work or until further order of the Commission; provided however, plaintiff is entitled to salary continuation for the first 2 years of disability. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries of 18 November 2001. This includes, but is not limited to, expenses incurred as a result of physical therapy and pain management as well as treatments administered or recommended by Drs. Katz, Clark, Long, Cooper, and Massey.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel. The accrued portion of this fee shall be deducted from the accrued benefits and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Defendant shall pay the costs.
This the ___ day of February 2007.
 S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/ ___________________ THOMAS BOLCH COMMISSIONER
 S/ ___________________ CHRISTOPHER SCOTT COMMISSIONER